BUFFALO ROYALTY CORPORATION, a Texas Corporation; BRC Management Company, Inc., a Texas Corporation, as General Partner for: Buffalo Royalty 1979 Drilling Program, Ltd., a Texas Limited Partnership; BRC Management Company, Inc., a Texas Corporation as General Partner for: Buffalo Royalty 1980–81 Drilling Program, Ltd., a Texas Limited Partnership; The B.K. Company, a Texas Corporation; Danden Petroleum, Inc., a Texas Corporation; First Sidney Corporation, a Texas Corporation; and Dennis L. Holt, Individually, Appellants,

v.

ENRON CORP., a Delaware Corporation; and El Paso Natural Gas Company, a Delaware Corporation, Appellees.

No. 07–95–0240–CV.

Court of Appeals of Texas, Amarillo.

Sept. 15, 1995.

Law Offices of John Mann, John Mann, Amarillo, Hutton & Hutton, Mark B. Hutton, Derek S. Casey, Wichita, KS, Law Offices of

Jon B. Wallis, Jon B. Wallis, Tulsa, OK, Law Offices of Robert G. Green, Robert G. Green, Tulsa, OK, Frasier & Frasier, James Clinton Garland, Tulsa, OK, for appellants.

Akin, Gump, Strauss, Hauer & Feld, Michael K. Swan, Houston, El Paso Natural Gas Company, Eldon J. Mitrisin, John Nance, El Paso, Berry D. Bowen & Associates, Berry D. Bowen, Houston, Enron Litigation Unit, Cary V. Sorensen, Houston, for appellees.

Before REYNOLDS, C.J., and DODSON and QUINN, JJ.

QUINN, Justice.

Pending before the court are the motions of Enron Corp. (Enron) and El Paso Natural Gas Co. (El Paso) to dismiss the appeal of Buffalo Royalty Corporation, A Texas Corporation; BRC Management Company, Inc., A Texas Corporation, As General Partner For: Buffalo Royalty 1979 Drilling Program, Ltd., A Texas Limited Partnership; BRC Management Company, Inc., A Texas Corporation As General Partner For: Buffalo Royalty 1980–1 Drilling Program, Ltd., A Texas Limited Partnership; The B.K. Company, A Texas Corporation; Danden Petroleum, Inc., A Texas Corporation; First Sidney Corporation, A Texas Corporation; and Dennis L. Holt, Individually, (collectively referred to as Buffalo) for want of jurisdiction. We grant the motions and dismiss.

### Facts

On July 17, 1995, Buffalo filed its Notice of Appeal and deposited $1,000 with the district clerk of Gray County, Texas to perfect same. As referenced in the Notice, it sought to appeal "from the Judgment of the Court, entered on May 30, 1995, and the Order signed January 20, 1993." The sole document contained in the record and signed by the trial judge on May 30, 1995, consists of an order confirming an arbitration award favoring Buffalo.

The January 1993 "Order," in turn, stays the trial proceedings, compels arbitration, and denies Buffalo's request for class certification. The latter request first appeared in Buffalo's original petition filed on May 8, 1992. In that pleading, it sued Enron and El Paso for breach of contract, accounting, conversion, fraud and misrepresentation, bad faith and breach of fiduciary duty, unjust enrichment, deceptive trade practices, and fraudulent concealment. Additionally, Buffalo wanted to represent, via class certification, all persons similarly suffering from the acts committed by the two defendants and encompassed by the causes of action alleged.

Enron and El Paso joined issue and moved to stay the proceedings and compel arbitration. Apparently some, though not all, of the contracts allegedly breached contained arbitration provisions. Seeking to enforce those provisions, the two named defendants moved for arbitration, and the January 1993 order evinces the trial court's attempt to resolve the respective class and arbitration disputes.

Despite the fact that Buffalo alluded to both orders in the Notice of Appeal, it apparently complains of only one. Of the two points of error assigned in the Brief, the first alleges that the court erred in denying certification of a class comprised of the thousands also supposedly injured by the breaches of contract. The second avers that the court erred in denying "certification for those members of the class with arbitration clauses in their contract." Consequently, the decisions to refer the dispute to arbitration, to stay proceedings pending arbitration, or to approve the arbitration award go unquestioned.

### Authority

■ It is beyond dispute that parties may appeal only from final judgments and a limited category of interlocutory orders. *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992). Also indisputable is the fact that an order denying a motion to certify a class is one of the few interlocutory decrees susceptible to immediate appeal. *Tex.Civ. Prac. & Rem.Code Ann.* 51.014(3) (Vernon's Supp.1995). Yet, the window in which the appellant must act does not continuously remain open. Quite the contrary, it closes immediately after the lapse of twenty days from the date the court signed the particular order. *Tex.R.App.P.* 42(a)(3). Unless the appeal is perfected within that period, the

appellate court loses jurisdiction to consider the assigned error. *Glidden Co. v. Aetna Cas. & Sur. Co.*, 155 Tex. 591, 291 S.W.2d 315, 318 (1956). Furthermore, the deadline is immutable; we cannot extend it. *NCNB Nat'l Bank of Texas v. Erwin,* 769 S.W.2d 655, 655 (Tex.App.—Corpus Christi 1989, no writ); *Revier v. Spragins,* 810 S.W.2d 298, 302 (Tex.App.—Fort Worth 1991, no writ).

## Application

■ The order denying certification at bar was signed on January 20, 1993. Two and one-half years lapsed before Buffalo undertook to appeal it. Given that the intervening period far exceeded twenty days, the appellate window had closed by the time Buffalo acted. More importantly, this court lost jurisdiction. Nevertheless, Buffalo endeavors to circumvent this outcome by arguing that Enron waited too long to move for dismissal and that federal law, which should be adopted by the court, permits appeal after entry of final judgment. Neither contention has merit, however.

■ That motions to dismiss for want of jurisdiction "shall be made, filed and docketed within thirty days after the filing of the transcript," *Tex.R.App.P.* 72, does not bar us from dismissing the cause. Rule 72 specifically allows the court to act on belated motions. *Id; Bethurum v. Holland,* 771 S.W.2d 719, 721–22 (Tex.App.—Amarillo 1989, no writ). Even if it did not, we would nevertheless have the *sua sponte* obligation to verify our power to act, *Bethurum v. Holland,* 771 S.W.2d at 722, for we can decide controversies only upon the grant of jurisdiction. In its absence, we simply have no choice but to dismiss. *Id.* Consequently, Enron's supposed tardiness matters not.

■ Next, and assuming that we were to adopt the alleged federal law allowing one to postpone review of a class certification order until entry of final judgment, the existence of a final judgment would undoubtedly be a prerequisite to appeal. Here, there is none. Nowhere does there appear in the record a document purporting to " 'declare the decision of the law upon the matters at issue.' " *Disco Mach. of Liberal Co. v. Payton,* 900 S.W.2d 71, 73 (Tex.App.—Amarillo 1995, no writ). Such is required of a decree to be final. *Id.* So too must the precept dispose of all issues and parties to be final. *Id.; Cherokee Water Co. v. Ross,* 698 S.W.2d 363, 365 (Tex.1985). Yet, no document appears of record which satisfies this element.

To the extent that Buffalo deems the May 30, 1995 order a "final judgment," it would be mistaken. That decree simply confirms an arbitration award involving the Buffalo plaintiffs and El Paso. Neither it nor the arbitration award attached thereto mention Enron or the claims against that defendant. Nor does the order dispose of the claims arising from the contracts lacking arbitration clauses and, therefore, withheld from arbitration. In fact, the award expressly addresses claims asserted under four contracts while Buffalo pled that seven different ones were breached.[1] Since the May 30th order fails to "declare[d] the decision of the law upon the matters at issue" or dispose of all parties and issues, it is not final.

Accordingly, we dismiss the appeal for want of jurisdiction.

---

1. Buffalo's effort to supplement the transcript does not fill the vacuum. Part of the supplement consists of an item labelled "Partial Dismissal of Contract Claims Against Enron". That document involves only one contract, that is, the agreement "arising from the Transwestern Pipeline Company contract". The "claims arising from ... [the] contracts with Northern Natural Gas, a division of Enron Corp.," were retained. So, disposition of the allegations against Enron remains open.