NO. 07-07-0014-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



JANUARY 31, 2007


______________________________



IN RE JOHANSON LEE WATSON, 



 Relator

_______________________________



Original Proceeding


_______________________________
 


Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 Pending before this court is the petition of Johanson Lee Watson for writ of
mandamus. The document is somewhat vague; so, we will construe it in a liberal manner. 
In so construing it, we see that he wants us to order the "Judge of the 46th Judicial District
Court of Wilbarger County Texas" (district court) "to act on the pending motion." We deny
the writ for several reasons.

 First, the nature of the motion goes unexplained, though Watson periodically refers
to an application for writ of habeas corpus. Nor has he provided us with an appendix
containing the "motion" at issue or any other documents pertinent to his request for
mandamus relief. The rules of procedure obligate one seeking mandamus relief to
accompany his petition with an appendix. Tex. R. App. P. 52.3(j). The latter must include,
among other things, a "certified or sworn copy of . . . [the] document showing the matter
complained of." Watson has not complied with this rule. 

 Second, a trial court cannot be found to have abused its discretion until the
complainant establishes that it 1) had a legal duty to perform a non-discretionary act, 2)
was asked to perform the act, and 3) failed or refused to do so. O'Connor v. First Court
of Appeals, 837 S.W.2d 94, 97 (Tex. 1992). To the extent that Watson complains of the
trial court's failure to set aside his conviction, application of the foregoing rule would
necessarily require him to illustrate that the trial court was aware of his request for and
refused same. This he did not do. Moreover, the same analysis applies to any motion
pending before the trial court filed by Watson. He has failed to illustrate that any of his
motions have been presented to the trial court or that the court has refused to rule. 

 Accordingly, the petition for writ of mandamus is denied.


 Brian Quinn 

 Chief Justice

 



y="9" QFormat="true" Name="heading 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-08-00367-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



MAY
21, 2010

 



 

JON JONES, APPELLANT

 

v.

 

AMADO Z. MORALES, APPELLEE 



 



 

 FROM THE 110TH DISTRICT COURT OF FLOYD
COUNTY;

 

NO. 9894; HONORABLE H. BRYAN POFF, JR., JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

OPINION

 

 

In this appeal of an election
contest, appellant and contestee below Jon Jones asks us to reverse the trial
court=s judgment finding appellee and
contestant below Amado Morales the winner of the November 2006 general election
for Floyd County commissioner precinct four, and render judgment declaring
Jones the winner.  Finding the trial
court did not abuse its discretion in adjudging Morales the winner, we will
affirm its judgment.

 

Background

The outcome of the commissioner=s race between Jones and Morales was
close.  The initial canvas showed Jones
the winner by three votes.  Morales
requested a recount which tallied Jones the winner by four votes.  Morales then filed the underlying election
contest in December 2006.  According to
Morales=s petition, the county=s early voting ballot board[1]
wrongly rejected A5-7 mail-in ballots.@ 
The issues for Morales at trial devolved to whether the ballot board
incorrectly rejected the mail-in ballots of voters Maldonado, De Los Santos,
Castillo, Olivo, and Vargas[2]
and whether two voters were wrongly denied precinct four ballots.  Each of the uncounted voters voted for
Morales.   Trial began in June 2008 but was
recessed until September because Vargas was hospitalized.  Judgment was for Morales as the court
concluded the votes of the uncounted voters should have been included in the
total and this omission materially affected the outcome of the election.  Thus Morales was adjudged winner of the
election by one vote.  This appeal
followed.

 

 

Issue

Jones argues the trial court abused
its discretion by rendering judgment for Morales.  Through multiple sub-issues he contends the
uncounted voters did not properly execute documents required for voting by
mail, Maldonado received improper assistance voting by mail, the ballot of De
Los Santos was improperly transported to the early voting clerk, and his motion
to dismiss for want of prosecution was improperly denied.  By cross-issue, Morales argues the trial
court abused its discretion by failing to find two voters were improperly
denied precinct four ballots.

Analysis

Appellate Jurisdiction 

In the trial court, Jones filed a
motion to dismiss the case for want of prosecution. The clerk=s record contains an AOrder Granting Motion to Dismiss@ signed December 20, 2007, a judgment
signed September 19, 2008, and Jones=s notice of appeal filed on September 19.  If the case was dismissed for want of
prosecution on December 20, we lack appellate jurisdiction.  See Tex. R. App. P. 26.1 &
26.3.  Therefore, on our own motion, we
first consider our jurisdiction of this appeal. 
See Buffalo Royalty Corp. v. Enron Corp., 906 S.W.2d 275, 277
(Tex.App.BAmarillo 1995, no writ) (appellate
court required to consider its jurisdiction sua
sponte if necessary).  

In the course of discovery, Morales
filed a motion to compel the county clerk to produce the ballots rejected by
the ballot board.  Jones responded with a
motion to dismiss the case for want of prosecution.  On December 20, 2007, the trial court heard
the motion.  The court was presented an
order containing language granting the motion and ordering that Morales take
nothing.  By pen and ink, the trial court
struck out the word granted and wrote denied immediately above.  But the court left undisturbed the sentence
ordering that Morales take nothing, and signed the order.  Thus the order purports to deny the motion to
dismiss but concludes with language ordering the relief requested.  Given this conflict in the orders language,
we must determine whether the order is ambiguous and if so the intention of the
trial court.

AThe same rules of interpretation
apply in construing the meaning of court orders as in ascertaining the meaning
of other written instruments.@ 
Lal v. Harris Methodist Fort Worth, 230 S.W.3d 468, 474 (Tex.App.BFort Worth 2007, no pet.).  A
court may consider on its own motion whether a document is ambiguous.  In re Golden Peanut Co., LLC, 269
S.W.3d 302, 313-14 (Tex.App.BEastland 2008, orig. proceeding).  Whether a document is ambiguous is a question
of law.  Tuthill v. Southwestern
Public Service Co., 614 S.W.2d 205, 211 (Tex.Civ.App.BAmarillo 1981, writ ref=d n.r.e.). 
A document is not ambiguous if as worded it can be given a definite or
certain legal meaning.  Kelly-Coppedge,
Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998).  But a document is ambiguous if its meaning is
reasonably susceptible to two or more reasonable interpretations.  Id.  

We find the December 20 order ambiguous.  On one hand, it denies the underlying motion
to dismiss for want of prosecution.  But
on the other, it contains language finally disposing of the case.  

Further, because the order was not produced
following a conventional trial on the merits, we do not presume its
finality.  Lehmann v. Har-Con Corp., 39
S.W.3d 191, 199 (Tex. 2001).  Rather,
following summary disposition when finality is not clear we look to the order
and the record to determine finality.  Id.
at 195.  And from the record our inquiry
is satisfied.  At the hearing on the
motion to dismiss, after the parties presentations and in open court, the
trial judge orally rendered an order denying Jones=s motion to dismiss.  It then took up the motion to compel, which
was granted by an order signed some twenty days later.  On April 25, the court set the case for trial
and trial began on June 24.  The case
proceeded to final judgment without recorded comment by the court or the
parties regarding the effect of the December 20 order.  The only reasonable interpretation of the
December 20 order is denial of Jones=s motion to dismiss.  The notice of appeal Jones filed following
final judgment was timely.  We have
jurisdiction of the appeal.

Whether Voting Irregularities Materially
Affected the Election Results.

ATo overturn an election, the contestant has the
burden of proving by clear and convincing evidence that voting irregularities
materially affected the election results.@  Tiller
v. Martinez, 974 S.W.2d 769, 772 (Tex.App.BSan Antonio 1998, pet. dism=d w.o.j.) (citing
Alvarez v. Espinoza, 844 S.W.2d 238, 242 (Tex.App.BSan Antonio 1992, writ dism=d w.o.j.), and Guerra v. Garza, 865 S.W.2d
573, 576 (Tex.App.BCorpus
Christi 1993, writ dism=d
w.o.j.)).  ATo prove that the outcome was materially affected, the
contestant must show that illegal votes were counted or an election official
prevented eligible voters from voting, failed to count legal votes, or engaged
in other fraud, illegal conduct, or mistake.@  Tiller, 974 S.W.2d
at 772 (citing Tex.
Elec. Code Ann. ' 221.003 (Vernon 1986) and Alvarez,
844 S.W.2d at 242).  

AThe standard of review in an appeal from a
judgment in an election contest is a determination whether the trial court
abused its discretion.@  Tiller, 974 S.W.2d at 772.  A trial court abuses its discretion when it
acts Awithout reference to any guiding rules and
principles.@  Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985). 

The sufficiency of evidence
supporting a trial courts finding of fact may be a relevant factor in
determining whether the court abused its discretion.  In re
C.J.H., 79 S.W.3d 698, 702 (Tex.App.BFort Worth 2002, no pet.) (citing Beaumont Bank v. Buller, 806 S.W.2d 223, 226 (Tex. 1991)).  In a
non-jury case, when the appellate record includes both findings of fact and
conclusions of law and a reporter=s record, we review the sufficiency of the
evidence under the same standards applied in cases tried by jury.  Slusher v. Streater, 896 S.W.2d 239,
241 (Tex.App.BHouston
[1st Dist.] 1995, no writ).  In reviewing
the legal sufficiency of the evidence under a clear and convincing standard, we
look at all the evidence, in the light most favorable to the judgment, to
determine if the trier of fact could reasonably have formed a firm belief or
conviction that its finding was true.  In
re J.F.C., 96 S.W.3d 256, 265-66 (Tex. 2002).  We presume that the trier of fact resolved
disputed facts in favor of its findings if a reasonable trier of fact could do
so.  Id.  We disregard any contrary evidence if a
reasonable trier of fact could do so, but we do not disregard undisputed
facts.  In re J.L., 163 S.W.3d 79,
85 (Tex. 2005). 

 

Irregularity of Signatures

Voting early by mail requires a voter
to apply in writing for a ballot and then mail the completed ballot to the
election clerk in an official carrier envelope bearing the signature of the
voter.  Alvarez, 844 S.W.2d at
244; Tex. Elec. Code Ann. ' 86.005(c) (Vernon 2010).  The ballot board may accept a ballot
voted early by mail Aonly if: . . . neither the voter=s signature on the ballot application
nor the signature on the carrier envelope certificate is determined to have
been executed by a person other than the voter, unless
signed by a witness; . . . .@  Tex. Elec.
Code Ann. '
87.041(b)(2) (Vernon 2010).  The law thus
requires those who vote early by mail to sign both the application and the
carrier envelope.  Alvarez, 844
S.W.2d at 245. 

When a contestant challenges a ballot board=s rejection of a ballot, the ballot board is
presumed to have acted properly and it is the contestant=s burden to show by clear and convincing evidence
the board erred.  Alvarez, 844
S.W.2d at 244-45; see Tiller, 974 S.W.2d at 773-74 (when contestant contends election judge rejected votes that should
have been accepted, rule has long presumed that each rejected ballot was cast
by an illegal voter).  Discharging this burden requires the
contestant to show the challenged voter was legally qualified to vote, and the
ballot was properly cast.[3]  Tiller, 974 S.W.2d at 774; Alvarez,
844 S.W.2d at 244.  But if a ballot
was rejected for a reason unrelated to the voter=s qualification, it is unnecessary for the contestant to
prove the qualification of the challenged voter.[4]  Tiller, 974 S.W.2d at 774; Alvarez,
844 S.W.2d at 244. 

The ballot board acts on the basis of the
signatures before it.  Alvarez, 844
S.W.2d at 245.  The Election Code does not require the board
to make inquiry of voters whose signatures do not match.  Id. 
But in an election contest based on ballots the ballot board rejected on
the ground of signature deficiency, the district court may receive oral
testimony from the voter or other witnesses regarding the similarity of the
signatures and may compare the signatures. 
Tiller, 974 S.W.2d at 777; Alvarez, 844 S.W.2d at
245.  The court may rely on its own
comparison without the aid of expert testimony. 
Tiller, 974 S.W.2d at 777; Alvarez, 844 S.W.2d at
245.  

Here, each of the uncounted voters
testified.  Each averred they signed the
application and carrier envelope, or in the case of Maldonado, marked the
required signatory lines with a witnessed AX.@ 
As the trial court candidly told counsel at closing argument, the
question of signature legitimacy presented a classic fact issue between the
uncounted voters= testimony and Jones=s expert who found a signature
discrepancy in the case of each uncounted voter.  The trial court resolved the issue in favor
of Morales.  In so doing, it was the
exclusive judge of the credibility of the witnesses, and the weight to be given
their testimony.  City of Keller v.
Wilson, 168 S.W.3d 802, 819 (Tex. 2005). 
It observed and was free to take into account the candor and demeanor of
the witnesses.  It also was free to make
its own evaluation of the signatures on the voters applications and ballot
envelopes in light of the testimony.  Tiller,
974 S.W.2d at 777; Alvarez, 844 S.W.2d at 245  During its oral rendition of judgment, the trial
court noted that due to their infirmities, he doubted most of the uncounted
voters would sign their signature[s] the same twice.  Implicit in the judgment of the trial court
is the determination that each of the uncounted voters properly signed the
application for ballot by mail and carrier envelope.  The court heard testimony that, if believed,
permitted it to form a firm belief or
conviction that its finding was true. 
The law does not allow us to disturb the trial courts credibility determinations.  City of
Keller, 168 S.W.3d at 819.  We
conclude the trial court did not abuse its discretion in sustaining Morales=s contest as to the votes of the
uncounted voters.

Improper Voter Assistance

We turn now to Jones=s affirmative claim that illegal ballots
were cast for Morales and these ballots should be excluded from the final
count.  Jones
argues that Maldonado received illegal assistance from Morales.

A voter who is unable to write or see due to a
physical disability or who is unable to read the language of the ballot is
eligible for assistance marking the ballot. 
Tex. Elec. Code Ann. '' 64.031, 86.010(a) (Vernon 2010).  A voter may be assisted in marking the ballot
by a person of the voter=s
selection other than the voter=s employer, an agent of the voter=s employer, or an officer or agent of a labor
union to which the voter belongs.  Tex.
Elec. Code Ann. '
64.032(c) (Vernon 2010).  A person voting
by mail may receive no greater assistance than a person voting at a polling
place.  Tex. Elec. Code Ann. ' 86.010(b) (Vernon 2010).  For purposes of § 86.010, assisting a voter
with a mail-in ballot, in the presence of the ballot or carrier envelope,
includes reading the ballot to the voter, directing the voter to read the
ballot, marking the ballot, or directing the voter to mark the ballot.[5]  Tex. Elec. Code Ann. ' 64.0321 (Vernon 2010).  A person assisting the voter to prepare a ballot must provide
his name, address and signature on the carrier envelope.  Tex.
Elec. Code Ann. '
86.013(c) (Vernon 2010).  The assistant
must also sign the oath prescribed in § 64.034 included on the carrier
envelope.  Tex. Elec. Code Ann. '' 86.010(c), 86.013(f) (Vernon 2010). 

In its findings of fact, the trial
court found each uncounted voter Awas either of advanced age or exhibited an obvious impediment
or infirmity.@ 
Each testified briefly. 
Maldonado, age eighty-eight, testified through an interpreter.  Maldonado testified she signed the
application for ballot by mail and the ballot with an AX.@  Her son witnessed her
sign the application and her daughter witnessed her sign the ballot.  On cross-examination, Maldonado was uncertain
whether Morales or one of Maldonados daughters helped her complete the
application.  When asked what role
Morales played in assisting her to vote she responded, AWell, heBthe role is that he came to my house,
and my daughters were there and they helped me, but he also helped me.@ 
Neither party questioned Maldonado further and Morales did not
testify.  Thus it is impossible to
ascertain what assistance Morales provided Maldonado.  Maldonados carrier envelope does not
identify Morales as her assistant.  

Jones points out that in Tiller
the court found the trial court abused its discretion by validating the ballot
of assisted voter Trevino whose carrier envelope certificate was not properly
executed.  974 S.W.2d at 775.  According to Tiller, AIf the person assisting the voter
fails to sign the carrier envelope certificate, the ballot shall not be
counted.  See Tex. Elec. Code Ann.
'' 86.005, 86.010(b), 86.012, 86.013(c)
(Vernon Supp. 1998).@ 
Tiller, 974 S.W.2d at 775. 
After review of the cited sections of the Election Code, including the
2003 amendments to those sections, we find ourselves in disagreement on this
point with our sister court.  Neither in
the cited sections nor elsewhere in the Election Code can we see a legislative
determination that a failure of a voters assistant to complete the required
information on the carrier envelope requires rejection of the voters
ballot.  As noted, statute expressly
provides that the ballot of a voter who is assisted in violation of subsections
(a) or (b) of § 86.010 may not be counted, but the legislature has not
disqualified the ballot of a person whose assistant fails to sign the oath, or
provide his name and address, on the carrier envelope.  Tex. Elec. Code Ann. § 86.010(d) (Vernon
2010).  

Long-settled rules of statutory
construction restrain us from reading words into the language chosen by the
legislature:

[E]very word of a statute must be presumed to have been used for a
purpose.  Likewise, we believe every word
excluded from a statute must also be presumed to have been excluded for a
purpose.  This rule complements another
general statutory construction principle that courts should not insert words in
a statute except to give effect to clear legislative intent.

 

In re Bell, 91 S.W.3d 784, 790 (Tex. 2002)
(citations omitted).  See Cameron v.
Terrel & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981) (additional
language is read into a statute Aonly when it is necessary to give effect to the clear
legislative intent@). 
The legislature expressly has provided that some actions require a
voters ballot to be excluded, and we decline to add to the legislatures
expressed list.

That it was Morales, a candidate, who
provided some assistance to Maldonado does not require a different
conclusion.  The legislature has
prescribed the class of individuals a voter may not select to assist the voter
in marking the ballot, and the excluded individuals does not include a
candidate.  See § 64.032(c)
(providing on voters request, voter may be assisted by any person selected by
voter other than the voters employer, an agent of the voters employer, or an
officer or agent of a labor union to which the voter belongs); § 86.010(a)
(limiting persons who may assist voter casting ballot by mail to those provided
by § 64.032(c)).    

Our review of the Election Code
requires the conclusion Moraless failure to provide the required information
and sign on the carrier envelope does not alone exclude Maldonados ballot from
the count of votes cast.  Maldonado was
entitled to no greater assistance than had she voted at the polling place.  Tex. Elec. Code Ann. ' 86.010(b) (Vernon 2010).  The trial court did not abuse its discretion
by not rejecting Maldonados ballot for assertedly improper assistance.

Improper Transport of Ballot

Jones next argues the mail-in ballot
of uncounted voter De Los Santos was improperly transported to the early voting
clerk.  Thus, he continues, the trial
court abused its discretion in validating the ballot.

On direct examination of De Los
Santos, age sixty-seven, the following exchange occurred:

Q.        Did you [cast your vote]
by mail-in ballot, sir?

A.        I don=t remember.  I think I got it in the mail, and then I sign
it and someone pick it up, I think.  I
think that=s the way it happened.

A voter voting by mail must place the
marked ballot in the official ballot envelope, seal the ballot envelope, place
the ballot envelope in the official carrier envelope, seal the carrier
envelope, and sign the certificate on the carrier envelope.  Tex. Elec. Code Ann. ' 86.005(c) (Vernon 2010).  A person other than the voter who deposits
the carrier envelope in the mail or with a common or contract carrier must
provide the person=s signature, printed name, and
residence address on the reverse side of the envelope.  Tex. Elec. Code Ann. ' 86.0051 (Vernon 2010).  The carrier envelope may be transported and
delivered to the early voting clerk only by mail or common or contract
carrier.  Tex. Elec. Code Ann. ' 86.006(a) (Vernon 2010).  A ballot returned in violation of § 86.006
may not be counted.  See Tex.
Elec. Code Ann. ' 86.006(h) (Vernon 2010).  

County Clerk Marilyn Holcomb
testified she was overseer of the 2006 general election.  Addressing the procedure applied to mail-in
ballots, Holcomb testified that the ballots rejected by the ballot board were
each returned by mail.  On this record,
we see no abuse of discretion in the trial courts refusal to reject the ballot
of De Los Santos for its asserted improper transport.

Motion to Dismiss for Want of
Prosecution

Jones next argues the trial court abused its
discretion by denying his motion to dismiss the case for want of prosecution.

A trial court is empowered to dismiss a case for
want of prosecution either under Texas Rule of Civil Procedure 165a or its
inherent power to control its docket.  Villarreal
v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex. 1999).  We review a trial court=s ruling on a motion to dismiss for want of
prosecution by the abuse of discretion standard.  MacGregor v. Rich, 941 S.W.2d 74, 75
(Tex. 1997). 

Citing Rule 6 of the Texas Rules of
Judicial Administration, Jones argues public policy favors prompt disposition
of civil non-jury cases.  In non-jury
cases, district court judges Ashould, so far as reasonably
possible, ensure that all@ non-family law civil Acases are brought to trial or final
disposition . . . [w]ithin 12 months from appearance date.@ 
Tex. R. Jud. Admin. 6(b)(2), reprinted in Tex. Gov=t Code Ann., tit. 2, subtit. FBAppendix (Vernon Supp. 2009).  According to Rule 1 of the rules of judicial
administration, the rules are promulgated pursuant to § 74.024 of the
Government Code.  Id. at Rule
1.  Section 74.024 provides Athe supreme court may consider the
adoption of rules relating to: (1) nonbinding time standards for pleading,
discovery, motions, and dispositions; (2) nonbinding dismissal of inactive
cases from dockets, if the dismissal is warranted; . . . .@ 
Tex. Govt Code Ann. ' 74.024(c)(1),(2) (Vernon Supp
2009).  Thus, the application of Rule 6
is discretionary and non-binding.  See
In re S.D.W., 811 S.W.2d 739, 746 (Tex.App.BHouston [1st Dist.] 1991, no writ) (juvenile case).  Moreover, circumstances may preclude
adherence to the standards under especially complex cases or those presenting
special circumstances.  Tex. R. Jud.
Admin. 6(e), reprinted in Tex. Gov=t Code Ann., tit. 2, subtit. FBAppendix (Vernon Supp. 2009). 
Thus, Rule 6 does not fix a bright line demarking the outward limit of a
trial court=s discretion to control its docket.

In the trial court, Morales argued
delay sprang in part from assignment of the case to an appointed judge.  But we find no record support for the
claim.  Rather, the record shows limited
pretrial activity.  Jones served requests
for disclosure with his original answer on December 14, 2006.  Morales deposed Holcomb in February 2007 but
she refused to produce rejected ballots without an order of the court.  In June, Holcomb, her counsel, and counsel
for the parties reviewed documents in Holcomb=s possession.  She
again refused to produce the rejected ballots. 
On December 11, Morales filed a motion to compel production of the
rejected ballots.  Jones responded and
moved for dismissal for want of prosecution under the court=s inherent authority.  By written response, Morales argued he did
not receive advance notice of the trial court=s intention to dismiss for want of prosecution and because
the contest was not of a primary election or a general or special election
requiring a runoff, the Election Code did not require an accelerated
schedule.  See Tex. Elec. Code
Ann. ' 232.012 (Vernon 2010).  At the hearing, the trial court expressed its
cognizance of Jones=s contention and indicated the case
probably should have been brought to trial more quickly.  But it resolved the issue in favor of
allowing the case to proceed.  Jones
reurged his motion on the first day of trial and it was again denied.

A trial court abuses its discretion
when it acts without reference to any guiding rules or principles, not when it
exercises that discretion in a manner different than a reviewing appellate
court might.  Urbanczyk v. Urbanczyk, 278
S.W.3d 829, 836 (Tex.App.BAmarillo 2009, no pet.) (citing Downer, 701 S.W.2d at
241-42).  Under the standard by which we
must review the trial court=s decision, we cannot say it abused
its discretion by denying Jones=s motion to dismiss for want of
prosecution.

Conclusion

Finding the trial court did not abuse
its discretion in sustaining Morales=s contest and denying Jones=s motion to dismiss, we affirm the judgment of the trial
court.  Because of our disposition, it is
unnecessary to consider Morales=s cross-issue that two voters were
improperly denied precinct four ballots. 
See Tex. R. App. P. 47.1.

 

                                                                                                James
T. Campbell

                                                                                                            Justice











[1]
The Election Code requires
creation of an early voting ballot board and empowers it to screen early voting
ballots.  See Tex. Elec. Code Ann.
'' 87.001-.005 & 87.041 (Vernon
2010).  We will cite the current version
of the Election Code unless otherwise indicated.  





[2] 
In its findings of fact and conclusions of law, the trial court
collectively identified Maldonado, De Los Santos, Castillo, Olivo, and Vargas as
Athe uncounted voters.@ 
We also refer to them collectively in that manner.





[3] 
A Aqualified voter@ is a voter who: (1) is age 18 years
or older; (2) is a United States citizen; (3) has not been finally adjudged by
a court exercising probate jurisdiction totally mentally incapacitated or
partially mentally incapacitated without the right to vote; (4) has not been finally convicted of a felony,
or if so has satisfied enumerated requirements; (5) is a resident of this
state; and (6) is a registered voter. 
Tex. Elec. Code Ann. ' 11.002 (Vernon 2010). 





[4] 
On appeal, Jones argues Morales failed to proffer clear and convincing
proof that the uncounted voters were legally qualified to vote.  However, there is no record indication that
this issue was raised and joined for trial. 
The record does not indicate the ballot board rejected any uncounted
voter for lack of qualification.  The
trial court and parties tried the case with the burden of proof allocated to
Morales to establish that each of the uncounted voters signed their mail-in
ballot application and ballot carrier envelope. 





[5]  Maldonados carrier envelope contains the following printed oath for a
person assisting the voter:

I swear (or affirm) that I will not suggest by word, sign, or gesture how
the voter shall vote; I will confine my assistance to answering the voter=s questions, to stating propositions
on the ballot, and to naming candidate (sic) and, if listed, their political
parties; and I will prepare the voter=s ballot as the voter directs.